Next case on the calendar is Collins et al. v. Northeast Grocery, Inc. et al. Mr. Sharman, I see you reserve one minute for rebuttal. Begin whenever you're ready. Good morning. May it please the court. My name is Paul Sharman of the Sharman Law Firm, and I represent the appellants who are participants in a 401k plan sponsored by Northeast Grocery. In this case, planned fiduciaries violated ERISA by not having nor following a prudent process for selecting and monitoring service providers and investments for the plan. In dismissing appellant's complaint, the district court erred in at least two respects. First, contrary to the district court's holding, appellants have Article III standing to bring claims on behalf of the plan for injuries suffered by the plan, and also to bring claims based on injuries to their own accounts. Well, this is a defined contribution plan, right? Correct. And so somebody who enters the plan has an array of 28 different mutual funds or stocks that they can purchase, and then they make their respective decisions. And the problem is that some of the funds that were picked and were allegedly in violation of the duty of loyalty or duty of prudence, these plaintiffs don't have any holdings in, right? Correct, Your Honor. And so if there were a finding of a violation of the duty as to these plaintiffs, they get nothing. So they don't have a concrete injury, do they? Well, the examples we provided were just taken from the publicly available information that we had, and they were really just done to illustrate the imprudent process employed to select and retain those funds and, in other cases, the providers. So they're really just examples. The allegations themselves are for the imprudent process, not necessarily because they pick Fund A over Fund B. But that's not enough to create standing. If they don't have an investment in those particular funds, you can't argue, like, you know, what's going on in those funds must have been going on in the other funds. There's no case law that suggests that you can create standing in that way. That would be way too easy. Well, it still creates injury to the value of plan assets as a whole. No, but it doesn't sound an injury to the plaintiff. Right, but they can— I think you're sort of confusing this with the notion of a class action where they may be a representative of something that's going on that's affecting the entire class. But that's not what we're looking at here. We're looking at a year or a straight standing question. But they can have a derivative claim under 502A2 to represent other injured class members. And, again, it's not under Rule 23, but just under Article 3. They can have standing to represent— Even though there's no direct injury to them? Yes. The cases cited by both the district court and by the appellees was actually the minority view in Second Circuit now, the Omnicom cases and various other cases. So, you know, it's our contention that they can represent, even though they didn't invest in those individual investments, that they can represent the class. All right, let me ask you about the claims that the court found were implausible, the ones that did go forward and were dismissed for failure to state a claim. The one where you had the most detail, at least in my view, was the recordkeeping fees. Yes, Your Honor. And, as you know, there was a 28-J letter that your adversary submitted to the court where, in a published opinion, the Singh case, we rejected, it seems like, almost exactly the same allegations and said that they lacked sufficient specificity regarding whether or not the services were the same or not. I mean, you certainly put in other examples, Molson and some other plans, where you said the participant percentage of fees were way out of—you know, disproportionate. But I think in Singh, we said that's not enough unless you can also allege that the services were similar. And in your response to that letter, all you said was we should have gotten an opportunity to amend, which we can talk about. But I'm just wondering how you distinguish Singh based upon your own allegations. Well, in pretty much all of these cases at this stage of the proceedings, there's definitely an asymmetry of information in terms of what we're able to get our hands on at this point. Singh rejected that idea. I mean, I understand that it's hard to know what the services are because you don't have access to that yet. Right. Singh—we said in Singh it doesn't matter. You have to have that to be plausible. Right. Well, there are also some issues we identified in terms of the way that they went about not sending out RFPs, not looking at other providers, not changing their provider for a very long time. That kind of thing is sort of circumstantial evidence that they did not have a prudent process for selecting their record keeper. Obviously, like you said, we don't have an exact menu of services that were offered. With the Molson plan, maybe you can explain this to me because I'm no tax expert, but you said that you believe that services were similar because of this form 5500 service code, that they had the same service code. Right. Explain that to me. Well, I'm not a tax expert either, obviously. None of us are. Well, you put it in your complaint. Right. No, I hear you. Yeah. Essentially, the way that they're classified in the 5500 listed as certain fees and apply to a menu of certain products that they provide as record keepers. And we can use that to compare—well, these financial experts can use that to compare apples to apples, essentially. So if you look at fidelity and what they generally offer, unless they're going to have some very specific, very specialized—and that's usually going to be in much larger plans or plans that have very specific needs. If we're talking about sort of standard 401k plans, they're going to offer a similar menu of services to similar size plans per participant. So it's not based on the code, then? No, it is based on that. But we can extrapolate from that that they used similar services. I just have a question about the motion, about the failure to give you an opportunity to amend. Yes. And I'm familiar with the case law that says that that local rule about not providing a copy of your pleading does not apply when a court is dismissing your case. It applies when you have a separate motion to amend. Right. They should attach the pleading, because how are you supposed to attach a pleading to your opposition to the motion of the decision if you don't know what the grounds are going to be of the court? But you don't really tell us what you would add. For example, on the recordkeeping fees or any other claim, you don't even tell us what you would add to correct the defects or the lack of detail that the district court pointed to. In your 20HA letter, you said we have more. Well, what we— But I don't know what the more is. Yeah, I mean, I don't have any specifics to tell you standing here today, but I can tell you that we would look at the response. We'd look at the motion to dismiss, the reply, the response to this appeal, and see what information was provided and try to, you know, I guess— I know we've had months since the district court's decision. What's that? You've had months since the district court's decision.  Yes. You're asking us to send it back when you can't even tell us what you would add. I mean, we only have the documents we have because we haven't gone through discovery yet. So, you know, we will try to shed more light on our recordkeeping claim and the other claims that we have. But, you know, it's our contention that the claim shouldn't have been dismissed in the first place. I guess it's our main contention. And the only reason we're asking for the leave to amend is that we haven't amended yet. And in most cases, you know, people at least get one shot at their—to amend their complaint.  But regarding—going back to the standing matter, because the issue really is about the prudent process, the failure to follow a prudent process, in terms of their selection and retention of investments, and the fiduciary's failure to follow the prudent processes and the selection and retention of the recordkeeper and the investments resulted in unnecessary costs to the plan. And that's why we believe that the plaintiffs have standing to stand in front of the—or as a member of the class and assert these claims. And we believe they also have 502A3 claims because the imprudence and self-dealing by plaintiff fiduciaries resulted in losses to their individual accounts as well. So, thank you. All right, thank you. This is pronounced Stanot?  Stanot, okay. Thank you. You can begin whenever you're ready. Thank you. May it please the Court. My name is Erica Stanot from the law firm of Harder C. Creston Emery, and I'm here today on behalf of Defendant Apelles, Northeast Grocery. This case is another in a flood of recent class action lawsuits that have been filed against employer-sponsored retirement plans. In most of those cases, like in this one, plaintiffs cast conclusory, broad, sweeping, and unfounded assertions of breach of fiduciary duty against the entities and individuals charged with administering these plans. In most of these cases, the plaintiffs accused those charged with administering the plans of imprudence in the selection of plan options and the management of plan costs, fees, and expenses. The complaints typically are short on facts, with plaintiffs asking the Court to draw inferences of imprudence from hindsight analysis and reliance on circumstantial information. In this action, plaintiffs asserted claims against the Northeast Grocery defendants for breach of the duties of prudence and loyalty, for failure to monitor, commission of prohibited transactions, co-fiduciary liability, and breach of fiduciary duty by omission. Like in the other cases that I was just talking about, the claims are largely based on conclusory and unsubstantiated allegations. In response to the complaint, the Northeast Grocery defendants, as you know, moved to dismiss, and after a thorough analysis of the complaint, the district court properly found that plaintiff's complaint should be dismissed. Your Honors asked a question about standing, which was one of the issues that we raised in our motion to dismiss, and your Honors were asking about the very points that we raised, which are the fact that you've got to be able to show a concrete injury. So in the district court's analysis of standing, the district court examined whether or not plaintiffs were invested in the challenged funds, and where they were not, the district court found, as this court pointed out, there was no concrete injury that the individual plaintiffs could have sustained. With respect to in- In other words, the district courts have come out differently in terms of where the line is with respect to standing. Isn't that accurate? It is accurate that the district courts have come out differently, your Honor, but I think the recent trend, and the recent trend in this circuit, is in the same direction that the district court went. If you look at the Antwon v. Marsh-McLennan case, the Omnicon case, Garthwaite one, the Singh decision, Patterson, all of those found similarly that where there's no investment in a particular fund, there cannot be that concrete injury that provides a plaintiff with standing. There is one standing issue that the district court, I don't think, directly addressed. You did in your briefs, but there is case law that suggests that if you have standing on some claims, if it's the same set of concerns, and this conduct raises the same set of concerns, then you could have standing over other claims. Which is exactly what the court did here. For example, the court found that plaintiffs had standing, excuse me for just a moment, to pursue their claims. It said failure to monitor portfolio managers was one, but I didn't see analysis by the district court that that doesn't raise the same set of concerns that having funds, not having enough alternative funds or having funds that shouldn't be part of the 28, I didn't see any analysis of whether or not that raises the same set of concerns or not. And that's in a case called NECA, IBEW, which you cite, and the district court didn't. So NECA really was looking at class certification, first of all. It did provide that analysis that Your Honor is referencing now, where if you can meet that second prong of same set of concerns, then you may have standing to pursue those claims. That's what the court did here in allowing, you know, two of the plaintiffs here were invested in the T. Roe Price Blue Chip Growth Fund. That was Collins and Lobdell. And because they were invested in that fund and raised issues about the monitoring the fund managers there, the court found that those same set of concerns could likely apply in the Fidelity Freedom 2030 Fund and the Loomis Small Cap Value Funds and allowed plaintiffs to move forward on the basis of standing with respect to that whole grouping under that analysis from NECA. I know, but it didn't say, but those same set of concerns are not implicated with respect to the other claims that it found no standing on. But with the other claims, we didn't have a plaintiff that had any investment in the alternative investments, in the revenue sharing funds, or in the. All right. Can I ask you about the failure to give leave to replead? I think it's pretty clear under our case law, Laura Lee Williams, and a summary order to crush you, which dealt with this Northern District local rule, that plaintiff doesn't have an obligation to seek to provide the pleading, a proposed pleading, until they get the judge's decision and they know which claims got dismissed and what the grounds were, right? Well, yes, Your Honor, we recognize the Cresci decision, but I think we've also got to look at a number of other decisions out of the circuit court. I believe Judge Walker might have been the author of the Noto versus 22nd Century Group decision. I believe that Judge Wesley may have been on the panels for the Altiar versus Etsy case and the Malin versus XL Corp. In addition, we can look at Surrey Prop Co versus. That's a different, in the Noto case, Judge Walker wrote, because they, and that's why I was asking him, we didn't say in the Noto case that you have to provide the proposed pleading. In the Noto case, the decision was based, and I think those other cases, where even on appeal, they couldn't articulate how they would have changed it. Agreed, Your Honor. But, you know, I think that you've got to really look at the district court. So it's almost like a harmless error type situation, where, yeah, the district court probably should have given an opportunity, but it's just details, it's just details. District courts are supposed to, if you can plead, more details. There's no substantive defect. It's not statute of limitations. It's just a failure to provide enough details. You give them one more shot. That's the standard rule, right? Well, it's not . . . I mean, you probably don't have any cases in this category. You know, you cite a lot of cases where these types of claims are dismissed, but as they point out in Sing and in the other case in your 28-J letter, there were multiple opportunities to amend in the district court. Nobody got one shot. I don't know about whether in any of these cases someone only got one shot. What I do know is that where in opposition to a motion to dismiss, a plaintiff simply included a sentence saying, if you find against me, I'd like another chance, that that was found to be insufficient in these cases. And the discussion in each of these decisions really focuses on . . . So when we said in Worley, without the benefit of a ruling, many a plaintiff will not see the necessity of an amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies. When we said in Williams, plaintiff has no obligation to seek, weave, to re-plead, immediately upon answering the motion to dismiss the complaint, without yet knowing whether the court would grant the motion, or if so, on what grounds. I mean, it's pretty clear. I acknowledge all those cases, Your Honor, but I don't think there's a hard and fast rule. And to Your Honor's point in your questioning of my friend on the other side . . . Should there be a hard and fast rule? And if so, what should it be? I think that the plaintiffs . . . The district court's decision gave two grounds for denying leave to amend. One was failure to follow the local rule. The second was futility. The court determined it had no basis on which to conclude that amendment of the pleading would somehow cure the defects. My friend here today, in response to Your Honor's questions, doesn't have any additional facts to offer. He confirmed that he doesn't have anything else. In all the months since this decision has come down . . . So, your answer to my question is, I don't know what the rule should be, but whatever it is, we're on the right side of it. I do think we're on the right side of it, Judge Walker. But, you've got to give the court something. You get one free shot. Your one free shot is when you get that motion to dismiss, and if you think that there's an issue raised there, you have an opportunity, without having to establish anything to the court, about whether your amendment would be futile or not. You get an amendment as of right at that point. And I think when you choose to jump on the roulette wheel and not respond to the deficiencies that are raised, you then put yourself in that bucket of needing to demonstrate some basis on which the court can grant you an opportunity to replead. I see that I'm over my time. Thank you very much for the opportunity. You had 30 seconds left, but that's okay.  Thanks. Thank you very much. Rebuttal. Thank you, Mayor. Please, the court. You caught me a bit off guard with asking about the amended complaint. I don't know why I caught you off guard. I'm just asking about what we would include. You said in your 28-J letter, in response to the sin case, we have more. I can tell you that we would add more specific facts about more and more of the 28 funds. We tried to limit it to a few very concrete examples in the original complaint, and I would also argue that we were not conclusory, that we did include very specific examples. We were not short on facts in our complaint, which was already rather long. But if we need to make the complaint several hundred pages, we will in order to show that there's an imprudent process here and that they did not follow the prudent process that's outlined by ERISA. So we would add more specific information. The problem is from our perspective. As your opponent says, had you done that at the district court, then we'd be examining, and the district court has said no. Then the controversy in front of us would have had far more definition to it, would it not? Possibly, but we felt like we had enough in there. So in your brief to us, then you don't then say the other types of things that you could do. Of course, it's off record, and you had the opportunity. You had your free shot at amendment, absolute amendment, when confronted with the motion to dismiss. But now it's a post hoc kind of thing. It's like, well, please let me amend anyhow. And we have a lot of case law that says that you should. I was on Honickman, which was just argued at the Supreme Court. And Honickman was right on the law. The district court was wrong, but didn't seek to amend. And then sought, didn't seek to amend when the merits appeal was argued here, and his complaint was insufficient because he was right on the law. I mean, it's a curious thing. Honickman's a really bizarre thing. It sticks in my craw, but what are we to do? You're here now telling us, and I'm not, Mr. Sherman, it's a tough spot to be in for you. Because what are we to look at to say that the Northern District Court abused its discretion in denying you the opportunity to amend when you haven't given us a single specific thing that you would say in a new complaint? I say I'm over my time, if I may answer. Leave it to the Senate chair. It'll be brief. What I would say is, if you don't want to give us blanket leave to amend, there is also the opportunity to give us to move to leave to amend and attach a copy of the amended complaint, and the court can at that point determine as a threshold matter if we can go forward with the amended complaint. Are you asking us to remand to the district court to consider an application to amend the complaint? Well, I'm asking you to overturn the decision and remand it. But in lieu of that, then yes, I would like you to, at the very least, give us the opportunity to amend. All right. All right, thank you. Thank you all. We'll observe the decision. Have a good day.